The Acquackanonk Water Company, appellants,

*v.*

The Manhattan Life Insurance Company, respondents.

The complainant, being the earliest grantee of owner, had an equity against mechanics lien-claimant to have its property sold last to satisfy the lien. A subsequent mortgagee of another portion of the lien-curtilage obtained a decree of foreclosure, to which complainant was not a party, excepting expressly the complainant's interest from the foreclosure sale. After this decree, the mortgagee bought up the lien-judgments and thereunder sold the interest of the complainant, excepting from such sale other parts of the lien-curtilage.— *Held*, that this was an inequitable use of the law-judgments, by which the due order of priority was reversed. The mortgagee who purchased at sale on lien-judgments enjoined from prosecuting ejectment against complainant.

On appeal from a decree advised by Advisory Master Gummere, on his findings, as follows:

Acquackanonk Water Co. *v.* Manhattan Life Ins. Co.

*Facts.*—On March 4th, 1876, Birch & Bender, under whom the respondents claim title, filed a mechanics lien against the entire premises shown on the above diagram.

The circle on said diagram marked A, represents the reservoir of the appellants. B, C, D and E represent, respectively, the parcels covered by the mortgages of the Real Estate Trust Company, Gerard and the Manhattan Life Insurance Company. All the mortgages were executed subsequent to the commencement of the erection of the mansion, which was in 1872.

Pending the proceedings under said lien-claim to sell the entire tract, the mortgagees of plots B, C and D negotiated with the respondents, mortgagees of E, for leave to contribute their *pro rata* shares of the lien-judgment of Birch & Bender and the lien-claims of other claimants. The negotiation resulted in such contribution being made by said mortgagees of plots B, C and D, and accordingly those plots were exempted from the sheriff's sale under the execution on said lien-judgment of Birch & Bender.

*Order of Transactions.*—1. Possession by water company and construction of reservoir in 1871. 2. Commencement of mansion, on plot E, before October in 1872. 3. Lease to water company executed October 18th, 1872. 4. Said lease to water company recorded October 26th, 1872. 5. Mortgages to Real Estate Trust Company, on B and C, executed January 2d, 1874. 6. Mortgage to Gerard on D, executed March 24th, 1874. 7. Mortgage to Manhattan Life Insurance Company on E, executed April 5th, 1875. 8. Filing of lien-claim by Birch & Bender, March 4th, 1876. 9. Contribution by mortgagees of B, C, D and E, June 12th, 1877. 10. Entire tract, including reservoir A, advertised to be sold under Birch & Bender's lien-judgment on August 5th, 1876. 11. Plot E, including reservoir A, sold to mortgagees of plot E, under Birch & Bender's lien-judgment, on August 4th, 1877.

The appellants, lessees of the reservoir property, seek the same privilege that was allowed the mortgagees of plots B, C and D, namely, to contribute their ratable share of the amount of the liens that embraced their property, and thereupon have

their property relieved from the effect of the liens. They contend that the sale on the lien-judgment of Birch & Bender, under the circumstances of the case, should not be a barrier, and that the petition should be regarded as favorably as if made prior to the sale.

*Findings.*—The complainant corporation avers in the bill, that in August, 1871, Anna Paulison, by her agent, C. M. K. Paulison, agreed by parol to let to it the lands set forth in the bill, for the term of twenty-one years, with the privilege of renewal, for successive terms of twenty-one years each, perpetually, for the use of erecting and maintaining thereon a reservoir and pipes for holding and supplying water. This agreement was for a term of twenty-one years from August 22d, 1871, with renewals, and the rent agreed upon was that the said Anna should have the right to draw from said reservoir all water necessary for the use of her dwelling the erection of which was then contemplated, the porter's lodge, stable &c. &c. Under this agreement the complainant entered upon the lands in question, and began the erection thereon of a reservoir and pipes in September, 1871, and completed such erection in November, 1871.

In the summer of 1872, Anna Paulison began the excavation for the dwelling-house referred to in the above-mentioned parol agreement.

The complainant repeatedly asked C. M. K. Paulison to deliver it a lease conformably to the terms of the parol agreement; no lease was executed in conformity to those terms, but Paulison finally, as agent for Anna Paulison, insisted upon different terms, and in October, 1872, and some weeks after the commencement of the excavation for the above-mentioned dwelling, Paulison and Anna, his wife, executed and delivered to the complainant, and it, with notice of such excavation, accepted a lease demising the lands comprised in the parol agreement, and described in the bill, for the term of twenty years from July 1st, 1872 (instead of twenty-one years from August 22d, 1871, the term agreed by the parol agreement to be demised), reserving an annual rent of $100 during the term, in addition to the use of water for the dwelling-house &c., fixed by the parol agreement;

the lease contained covenants of renewal for successive terms of
twenty-one years each, perpetually, and in that respect conformed
to the parol agreement; but it also contained a provision that the
lessors might at any time terminate the demise upon giving one
year's notice and paying the lessee the sum of $5,000. This last
provision is not alleged in the bill to have been one of the terms
of the parol agreement, and although Thomas D. Hoxsey testifies
in general terms that the parol agreement was embodied in the
lease, yet such testimony cannot prevail to engraft upon the
parol agreement a term so important as this provision in addi-
tion to those deliberately pleaded by the bill.

This lease was recorded in the clerk's office of Passaic county
on October 27th, 1872.

In 1876, Birch & Bender filed a mechanics lien claim against
C. M. K. Paulison, builder, and Anna Paulison, owner, upon
the dwelling-house aforesaid, and the curtilage upon which the
same was erected, which curtilage comprised not only the lands
demised to the complainant, but also lands comprised in certain
mortgages held respectively by the defendant and by James W.
Gerard, and the New York Real Estate Trust Company. Birch
& Bender brought suit upon their said lien-claim against said
builder and owner, and recovered judgment in May, 1876, which
was adjudged to be a lien upon such estate as Anna Paulison,
owner, had in the curtilage described at the date of the com-
mencement of the erection of said building, and a special *fi. fa.*
was issued thereon in May, 1876.

A number of other lien-claimants filed their lien-claims against
the same building and curtilage or parts thereof, and obtained
like judgments against the same, to wit, Anderson, Falstrom &
Tornquist, Burke, Dowd and Driscoll.

The defendant afterwards foreclosed its aforesaid mortgage and
made the lien-claimants above mentioned parties defendant, and
in that suit the said six lien-claims were adjudged to be prior en-
cumbrances to the mortgage of the defendant; the defendant
thereupon purchased said lien-claims, paying the full amount
due thereon, say $3,200, and took assignments thereof.

James W. Gerard, one of the mortgagees above named, applied

to the Passaic circuit court to reduce the curtilage described in said lien-claims, which application was refused, and the same mortgagee in a suit in chancery, in which the defendant and the lien-claimants were made parties, sought to have the premises covered by his mortgage exempted from the said liens, which relief was refused.

An arbitration was then had between the defendant James W. Gerard and the New York Real Estate and Trust Company to determine the proportionate parts which should be paid by each to satisfy the common burden of the liens; the proportions were determined and paid accordingly.

A special *fi. fa.* was issued upon the judgment recovered by Birch & Bender to make sale of the dwelling and curtilage comprising the lands demised to the complainant, and lands covered by the respective mortgages of the defendant James W. Gerard and the New York Real Estate and Trust Company, and under that writ the premises were advertised for sale on August 5th, 1876. On that day the sale was adjourned and notice was duly published of the day to which the sale was adjourned. It was further adjourned for one week, and thereafter, by direction of the plaintiff's attorney, adjournments were made from week to week, until the sale was actually made on August 4th, 1877. Prior to that sale, and after James W. Gerard and the New York Real Estate and Trust Company had paid their respective contributions toward re-imbursing the defendant for the amount expended by it in the purchase of the aforesaid lien-claims, the chancellor, upon their application, restrained the sheriff from selling those portions of the curtilage which were conveyed by their respective mortgages, and on August 4th, 1877, the sheriff sold the residue of the curtilage, comprising the lands demised to the complainant, to Mr. Fellows, the attorney of the defendant, for the sum of $385, and Fellows subsequently conveyed said lands to the defendant for a nominal consideration.

In October, 1878, the defendant began an ejectment suit against the complainant to recover the possession of that portion of the aforesaid curtilage so sold by the said sheriff, comprised in

the aforesaid lease made by the Paulisons to the complainant, and thereupon the complainant filed its bill, praying that the defendant be enjoined from prosecuting said ejectment, and that the amount the complainant should equitably contribute towards the payment of the same bid at the sheriff's sale under the Birch & Bender judgment and execution should be ascertained by this court, and that upon payment of such contribution, the complainant should hold the lands demised to it according to the terms of said lease.

I determine as matter of law:

*a.* That the complainant took the interest, under the parol agreement for a lease and its entry thereunder upon the lands described in the bill in that behalf, of a tenant from year to year, and that its possession of said lands was that of a tenant from year to year, and that it had no other right in said lands at law or in equity, by virtue of said parol agreement.

*b.* That the complainant had notice of the commencement of the excavation for the dwelling erected upon the lands of Anna Paulison.

*c.* That with notice of such excavation, and of the liability of the curtilage to mechanics liens, the complainant, after such excavation was commenced, accepted from the Paulisons a lease demising a different term of years, reserving a different rent, and containing different covenants from the term, rent and covenants agreed upon in the parol agreement; and that by such acceptance of said lease the complainant surrendered whatever rights it had theretofore possessed or claimed under the parol agreement aforesaid, and thenceforth had no other rights in the demised premises than those conferred by said lease, which rights were subject to all liens upon said building incurred in the erection thereof.

*d.* That as lessee for a term, the complainant was not an owner of any part of the premises comprised in the curtilage described in the lien-claim of Birch & Bender, according to the intent of the mechanics lien law, and that it was not a necessary or proper party to the suit to enforce their lien in the Passaic circuit court

*e.* That the complainant had notice of the erection o'' the said

dwelling, and constructive notice of the attaching of Birch & Bender's lien, of the filing of the claim, of the suit and judgment thereon, of the issuing of the execution and of the sale thereunder of the premises in question.

*f.* That the complainant was not surprised by the sale, by reason of the adjournments thereof from week to week by the direction of the attorney of the plaintiffs at law, but that by reason of its own laches and negligence it was in fact ignorant of the existence of the lien-claim and of all the proceedings thereon.

*g.* That the defendant is in no wise responsible for the action of the sheriff in selling a part only of the curtilage described in the execution at law; that the sheriff was enjoined by a competent court from selling any greater portion of said curtilage, of which action the complainant had constructive notice and took no steps to contest or review it, and that the sheriff's sale was valid and effectual in law.

*h.* That the complainant is not entitled to the injunction and contribution prayed in his bill, and that the said bill should be dismissed.

*Mr. Thomas M. Moore,* for appellants.

*Mr. John R. Emery,* for respondents.

The opinion of the court was delivered by

VAN SYCKEL, J.

Anna Paulison being the owner in fee of the premises marked 1, 2, 3, 4 on the above diagram, agreed by parol in August, 1871, to let a portion thereof to the Acquackanonk Water Company for the term of twenty-one years, with the privilege of successive renewals, for the purpose of erecting thereon a reservoir with connecting pipes, for water-works. In pursuance of this agreement the water company constructed the reservoir marked A on the diagram, with the necessary connections to supply water.

After repeated attempts to obtain from Mrs. Paulison a written lease in accordance with the terms of the verbal agreement, the

Acquackanonk Water Co. *v.* Manhattan Life Ins. Co.

water company in October, 1872, accepted from her a lease in writing upon somewhat different terms. This lease, which was recorded on the 26th day of October, 1872, must be presumed to embody the terms of their contract.

In the summer of 1872, and before the execution of the said lease, Mrs. Paulison commenced the erection of a dwelling-house upon the said premises, marked H on the diagram. ·

In January, 1874, lots marked B and C were mortgaged by Mrs. Paulison to the Real Estate Trust Company.

In March, 1874, she mortgaged lot marked D to one Gerard.

In April, 1875, she mortgaged lot E to the Manhattan Life Insurance Company, expressly reserving to the said water company the reservoir, connecting pipes and its rights under the aforesaid lease.

In March, 1876, Birch & Bender filed a lien-claim against the said dwelling-house, including the entire premises marked 1, 2, 3, 4, as the curtilage. Unsuccessful attempts were made to reduce the curtilage.

Subsequently, judgments were obtained by Birch & Bender and by other lien-claimants, in all amounting to about $3,200. A special *fi. fa.* was issued upon the Birch & Bender judgment for the sale of the entire lot 1, 2, 3, 4. ·

The Real Estate Trust Company filed a bill to foreclose its mortgage, making the lien-claimants parties.

Gerard filed a like bill.

The Manhattan Life Insurance Company filed a bill to foreclose its mortgage on the 5th of May, 1876, making the lien-claimants parties, on which a decree was rendered July 10th, 1877, declaring the lien-claims to be prior to said mortgage, and directing that lot marked E be sold, expressly reserving and excepting therefrom the said water company's reservoir, pipes and rights under said lease, to pay and satisfy in the first place the said several lien-claims, and in the second place the said mortgage of the said Manhattan company.

The said water company was not made a party to any of these foreclosure suits.

38

Execution was issued upon this decree, directing a sale in pursuance of the terms thereof.

Soon after the filing of this bill of foreclosure the special *fi. fa.* was issued upon the judgment of Birch & Bender.

Thus the sheriff had in his hands the execution on the lien-judgment, directing the sale of the entire premises 1, 2, 3, 4 to pay the lien-claims, and also the execution on the said Manhattan company's decree, directing the sale of lot marked E, excepting the water company's rights as aforesaid.

The Real Estate Trust Company, the Manhattan Life Insurance Company and Gerard arbitrated as to the amount each should contribute to the satisfaction of the lien-judgments, and on the 12th day of June, 1877, the arbitrators made an award, in which the said parties acquiesced.

Thereupon the Real Estate Trust Company paid the proportion assigned to it, and upon petition to the chancellor obtained an injunction restraining Birch & Bender from selling under the lien-execution the land mortgaged to it.

Gerard obtained a like injunction as to the premises mortgaged to him.

The water company was not a party to any of these proceedings.

The Manhattan company purchased the lien-judgments and took an assignment thereof, and after the arbitration, on the 4th of August, 1877, procured a sale to be made by the sheriff under the lien-executions of the entire premises marked 1, 2, 3, 4, excepting only lots B, C and D, and not excepting the reservoir and rights of the said water company. At that sale the said Manhattan company became the purchaser through its agent, for less than $400, and thereby reversed the order of priority established by the decree in its own foreclosure suit.

After the purchase under the lien-execution, the Manhattan company brought ejectment against the said water company, to recover possession of that part of the said premises held by said water company under the aforesaid lease.

The water company thereupon filed its bill in the court of chancery against the said Manhattan company, praying:

1. That the account may be taken under the direction of this court of the amount paid by the defendant or its attorney, in satisfaction of the bid made at said sheriff's sale, and of the amounts contributed by parties interested in the portions of the said curtilage not sold at said sale, towards re-imbursing said defendant for said bid.

2. That the relative values of the estate of your orator in the lands demised to it in and by said lease, and the remaining portion of the lands sold and conveyed to said defendant, by virtue of the execution issued in said suit to enforce said mechanics lien, may be ascertained under the direction of this court, and that this court having due regard to such values may determine such proportion of the amount paid by the defendant to satisfy said bid as may be equitable to be paid by your orator to the defendant, and that upon such payment being made, the defendant may be decreed to hold the lands and tenements demised to your orator in and by the said lease, subject to the said lease and the terms and conditions thereof.

3. That the said defendant may be enjoined from its said suit of ejectment so far as the same respects the lands demised to your orator in said lease and hereinbefore particularly described.

That relief, having been denied in the court below, is sought by appeal here.

From the preceding statement of facts, there can be no doubt as to the due order of priority in equity of these several conflicting claims, assuming that the reservoir is embraced in the curtilage of the dwelling erected and so subject to the liens, which is not intended to be hereby conceded. Nor is it intended to be admitted that the lessee in possession is not to be regarded as an owner under the mechanics lien law, and as such entitled to summons.

The lien-claims were the superior lien, and the lands mortgaged to the Manhattan company should have been first sold to satisfy those claims. That proving insufficient for the purpose, the premises mortgaged to Gerard should have been next sold; then the lots mortgaged to the Real Estate Trust Company, and lastly, if any balance remained unpaid, the reservoir and interest

of the water company. If the Manhattan company had sold under and by virtue of the foreclosure decree, the rights of all parties would have been duly regarded. By the scheme it resorted to, it has obtained an undue advantage at law, and put itself in a position that in equity it ought not to be permitted to retain. It is apparent from the case that the premises subject to the rights of the water company are worth many times the amount of all the lien-claims. The sale under the lien-execution cannot in equity be permitted to deprive the water company of its rights, from the fact that lots B, C and D were expressly excepted and reserved from that sale. Those lots, under an equitable marshaling of the assets, were subject to be sold to pay the liens before the interest of the water company in the premises was resorted to. The command of the execution at law was to sell the entire premises, and if that had been done, a surplus might have been produced to which the water company could have resorted for indemnity. The fact that the sheriff was enjoined by a competent court from selling the three parcels specified, cannot affect this controversy, for the reason that the water company was not a party to the suit in which the injunction order was issued and had no opportunity to resist it.

It is manifest that the injunction was granted upon the understanding that all parties in interest acceded to it. It was the outcome of the arbitration between the mortgagees in reference to the liens, in which the complainant in this case took no part, and of which it had no knowledge.

Such an order could not have been obtained if the *status* of the water company had been brought to the notice of the court.

The decree below should be reversed, with costs. The defendant should be decreed to hold the lands purchased as aforesaid, subject to the rights of the complainant under the said lease, and the further prosecution of the ejectment suit should be enjoined.

The defendant is not entitled to claim contribution from the complainant to the payment of the liens, unless those portions of the premises primarily liable are insufficient to satisfy the lien-claims.

*Decree unanimously reversed.*